IN RE ESTATE OF F. W. BUERSTETTA.
GRANT BUERSTETTA, EXECUTOR, APPELLEE, V. HENRY
BUERSTETTA ET AL., APPELLANTS.

FILED JANUARY 23, 1909.   No. 15,353.

1. **Appeal:** QUESTIONS CONSIDERED.   Where a judgment of the lower court and the disposition of the case in this court are not prejudicial to the interests of an appellant, this court will not consider an assignment of error that the lower court had no jurisdiction over the person of the appellant.

2. **County Court:** JURISDICTION: TITLE TO REAL ESTATE.   The provision of section 16, art. VI of the constitution barring the county court from jurisdiction of actions in which title to real estate is sought to be recovered or may be drawn in question does not apply to cases wherein the title to realty is involved as an incident to an important litigable question of which that court has exclusive original jurisdiction.

3. **Wills:** CONSTRUCTION.   In the construction of a will, the court will presume that the testator intended the will as a consistent whole, and will consider it in its entirety, its several parts with reference to each other, to ascertain, if possible, the meaning which the testator attached to any part thereof.

4. **Executor as Trustee:** TITLE TO REAL ESTATE.   An executor, as a trustee, cannot hold the legal title to land devised for the use of the beneficiary, unless the testator has by his will expressly or impliedly created in him a trust estate other and different from that of executor, or unless a trust is made necessary that the intentions of the testator may be executed.

APPEAL from the district court for Johnson county: WILLIAM H. KELLIGAR, JUDGE.   *Reversed.*

*E. B. Quackenbush,* for appellants.

*Hugh La Master* and *Burkett, Wilson & Brown, contra.*

EPPERSON, C.

This action was instituted in the county court of Johnson county by the executor of the last will of F. W. Buerstetta, deceased, for the purpose of procuring judicial con-

struction of the will in order that he might carry out the provisions thereof. The will was admitted to probate February 27, 1905. Provision was made in paragraph 1 for the payment of debts, funeral expenses, etc. By the second paragraph testator gave to his wife, Belle Buerstetta, the use of certain valuable real estate not necessary to describe here. This devise was not absolute, but the wife's right to enjoy the land was limited, and fixed as follows: "During the term of her natural life, and all the rents, profits and benefits to be derived therefrom. In case the rents, profits and benefits of this property is more than is needed for her support, it shall be loaned or invested in real estate as seen fit by my executor."

Other paragraphs are as follows: "Third. After the death of my said wife Belle Buerstetta the property heretofore mentioned shall be divided in the proportion which shall be mentioned hereafter in this will, among my brothers and sisters.

"Fourth. I give to my beloved Mother Sarah C. Berry, $50 in cash.

"Fifth. It is my desire that the property mentioned as the share of my beloved brothers John Buerstetta, Henry Buerstetta and William Buerstetta and my beloved sister Matilda Tingle is to be invested in real estate, chosen by them, to be theirs as long as they shall live without the right to incumber or sell the same, and all the rents profits and benefits of the same to be theirs, taxes to be paid by them and at their death it shall be divided equally among their living children.

"Sixth. To the three children of my beloved brother George (deceased) I give $500 each to be retained by my executor until they become 21 years of age and shall be loaned on real estate and the income shall first pay expenses and in case there is accumulation it shall go to the children herein mentioned.

"Seventh. To my beloved Brother John Buerstetta I give $2,000 in cash."

And in paragraphs 8 to 13, inclusive, are bequests to

each of his several brothers and sisters, among whom are Henry, William and Matilda, each bequest being identical with paragraph 7, except as to the name of the beneficiary. Paragraph 14 is as follows: "Fourteenth. To my beloved half-sister Jessie Hahn I give $250, this to be the full amount of her share and all she shall have of my estate."

Paragraph 15 makes a gift to a church, and by paragraph 16, a brother, Grant Buerstetta, is named executor. Following this is the date of the will, December 31, 1904, and the signature of the testator. But following the signature are other testamentary provisions in consecutively numbered paragraphs. Number 17 provided for the sale by the executor of all the real estate, except such as had been mentioned above.

Other sections are as follows: "Twentieth. After all my affairs are settled and the sums paid over or invested as has been mentioned heretofore in this will whatever is left shall be divided among my brothers and sisters in the same proportion as has been mentioned heretofore in this will and shall be invested or paid over as has been stated heretofore except to the three children of my beloved brother George and the part heretofore mentioned in this will as their share to be the full amount of their share and all they shall have of my estate.

"Twenty-First. I have made this will in view of a contract existing between myself F. W. Buerstetta and my wife Belle Buerstetta that at her death she agrees that the residence property owned by her in Tecumseh, Johnson Co., Nebraska, situated one block east of public square on Clay st. go to my brothers and sisters and be disposed of in the same proportion as has been provided for in this will and she hereby acknowledges this contract by signing her name (Signed) Belle Buerstetta."

Other paragraphs provide for intended recipients or for the execution of obligations, none of which are here involved. The will was again signed and attested.

22

The executor appointed by the will qualified and entered upon his duties. He has sold all the land, except that mentioned in the second paragraph, and now has on hand about $27,000 after paying all the legacies, except the bequests to the brothers and sister.

The adult defendants contend that the county court did not acquire jurisdiction over their persons; but by their general appearance in that court they waived whatever defects may have existed in the service of process.

Fred Buerstetta, a nephew of the testator, is here urging that the county court had no jurisdiction over him. He was a minor at the time of the trial in the lower court. Whether he is now or not the record fails to disclose, but as he has appealed from the judgment of the district court, we presume he has reached his majority. We ignore his appeal. The judgment of the lower court was favorable to his financial interests, although adverse to his contentions. The judgment we recommend does not prejudice him. He is now, and in the lower court his guardian *ad litem* was, contending that he had no interest in a $2,000 gift, which was made for the benefit of Henry Buerstetta during his life, with remainder to his (Henry's) children, of whom Fred is one. If he does not want his uncle's gift, he can dispose of it now that he has reached age, without license from the court.

It is also contended that the county court had no jurisdiction of the subject matter of this case. By section 16, art. VI of the constitution, county courts are given original jurisdiction in all matters of probate, settlement of estates of deceased persons, etc. The county court is thereby invested with such powers; and it has been held that the county court has exclusive original jurisdiction in all matters of probate, and in actions for the construction of wills upon the application of the administrator, when such construction is necessary for the purpose of enabling him to carry into effect the provisions of the will. *Reischick v. Rieger*, 68 Neb. 348; *Youngson v. Bond*, 69 Neb. 356, and cases cited. This general rule

is not assailed by the defendants, but they contend that a question of title is here presented, which defeats the jurisdiction of the county court, by reason of other provisions of said section of the constitution, which deny to the county court jurisdiction in cases involving the title to real estate. It is conceded that the authority of the county court in actions to consider wills is confined to the purpose of giving necessary and proper directions to an executor so that he may effectually execute the intentions of the testator as expressed in the will. In *Youngson v. Bond, supra,* a distinction is made between actions brought by an executor for a construction of a will and one by a trustee after settlement of the estate to obtain a construction of the provisions of the will relating to the trust. In the latter case a court of general equity powers should have jurisdiction. But this action is brought before distribution. The executor has in his hands $27,000, a part of which, on account of an ambiguous provision in the will, he does not know how to distribute, and he calls for judicial guidance. There is no land the title to which is in controversy. The question involved is what disposition shall be made of certain sums of money, and this only to the extent of determining whether this money shall be delivered in specie to the beneficiary or invested in real estate for his benefit. In other words the intention of the testator is to be ascertained, and the language used by the testator in expressing his intention is the matter in dispute. Incident to the main inquiry, the question of the vesting of the legal title to land which is to be purchased is concerned, but the constitutional inhibition barring the county court from jurisdiction in cases where the title to real estate is involved does not apply to those cases wherein the title is determined as an incident to an important litigable question of which that court has exclusive original jurisdiction. If the title to real estate is the principal thing to be determined, then, necessarily, the title is in issue, but, if that question arises incidentally, it is not considered in issue so as to

bar the court from entertaining the action. As was said by Mr. Commissioner POUND in *Youngson v. Bond, supra,* referring to the constitutional limitation upon the jurisdiction of the county court: "The evident meaning is that the county court shall have no jurisdiction of actions to recover real property or wherein the present title to real property is directly or substantially involved. But the provision does not mean that the county court is to be without jurisdiction where a question of title arises incidentally or collaterally or where the present title is not involved."

The questions to be determined are whether or not the testator intended that $2,000 was to be paid in cash to each of the three brothers, John, Henry and William, and the sister, Matilda, or that that sum was to be invested in real estate for them during life with remainder to their children. If invested, should the title be taken in the name of the executor as trustee, or in the names, respectively, of the beneficiaries? In what lands are these funds to be invested? Who is to select the lands? If the beneficiaries for life, then can the court place any restraint whatever upon their selection? Who takes the remainder, the living children of the three brothers and sister named *per stirpes* or *per capita?* It is apparent, and in fact there is no serious contention but that, if the funds are to be invested in land, at the death of each of the brothers and sister his or her children then living should take the property of which their parent was the life beneficiary.

The lower court found and decreed that the $2,000 given to each of the brothers and sister above named should be invested in land by the executor as trustee, taking title in his name, for the use and benefit of the beneficiaries; that the trustee should manage such real estate, pay taxes, insurance, etc., pay the net proceeds to the beneficiaries, and make annual reports of all moneys collected and expended. By this decree a *continuing trust* was created. Henry Buerstetta and his children have appealed. Other relief was granted by the lower court, ap-

proving the conduct of the executor in disposing of real estate, which is not assailed by this appeal.

A few general observations here noted are of value in the interpretation of this instrument: The testator intended, although not expressly saying it, that his brothers and sister of the whole blood should be the beneficiaries of equal shares of his estate. The will may, for the purpose of analysis, be considered as consisting of three parts or divisions: First, specific real estate is disposed of in paragraphs 2 and 3; second, a number of specific bequests or devises; third, the residuary clause. It is assumed that the testator intended that his will should be a consistent whole, and we must consider it in its entirety, its several parts with reference to each other, to ascertain, if possible, the meaning which the testator himself attached to any part thereof. The function of the court is to interpret, and not to construct. The cardinal rule requires the court to ascertain the expressed intentions of the testator. We have not found it necessary to examine the extraneous evidence introduced upon trial for the purpose of ascertaining the testator's intentions.

The first important question is to determine what property was referred to in the fifth paragraph as "the property mentioned as the share of my beloved brothers John, Henry and William and my beloved sister Matilda." Defendants contend that it refers to the real estate mentioned in the third paragraph, in which all the brothers and sisters were given the remainder. We cannot accept this construction. The second and third paragraphs effectively dispose of the property therein mentioned, and, beginning with the fourth paragraph, by a bequest of $50 in cash to his mother, testator undertook to dispose of other property. It does not seem probable that, after disposing of specific real estate in unequivocal terms, and after beginning the disposition of other property by making specific bequests, the paragraphs referred to could have been intended as a limitation upon the devise made in the former division of the will. Nor does it seem pos-

sible that it could refer to the residue disposed of by the third division. The fifth paragraph did not specifically mention any property, but it referred to whatever property the testator intended to identify by the phrase "property mentioned as the share." The only property mentioned in the second division of the will as the shares of these beneficiaries are the items of $2,000 to each. Although the "property mentioned" in the fifth paragraph cannot refer to the residue of the estate disposed of in the third division of the will, yet the language used in the residuary clause is of evidential value in ascertaining the intentions of the testator as expressed in the fifth paragraph. This clause provides for the disposition of the residue after "the sums paid over or invested as has been mentioned heretofore." This *"invested"* may possibly have referred to the bequest to nephews in the sixth paragraph; but, in view of what follows, we think not, for, continuing the residuary clause provides that the residue shall "be *invested* or paid over" to the brothers and sisters as stated heretofore. This indicates that testator contemplated that an investment had been previously arranged for some of his brothers and sisters. And in this regard it is improbable that he referred to the remainder of the specific real estate in the second and third paragraphs, as the enjoyment of that remainder would not probably begin until long after the bequests mentioned in the will had been paid over and the estate settled. Although the $2,000 was mentioned as a cash bequest to each of the three brothers and one sister, it is very apparent, from the whole instrument that testator intended that it should not be paid to them, but should be invested for each of them "in real estate chosen by them." Their share of the residue is likewise to be invested.

The executor is entitled to judicial guidance in making this investment. Should he purchase in his own name or in the names of the beneficiaries? In no case can the executor hold the legal title as a trustee unless the will itself has, either expressly or impliedly, created in him a

trust estate other and different from that of executor, or unless the trust is made necessary that the intention of the testator may be enforced. It is the executor's contention that the language used in the will was sufficient to create such a trust. It does appear that the testator considered that the executor would indefinitely have control of some part of the estate. For instance, the second paragraph provides that the surplus accumulated from the rents derived from the land mentioned therein shall be loaned or invested by the executor, and paragraph 6 provides that he shall hold the bequest to the children of his deceased brother George until they arrive at their majority. But there are no similar expressions made with reference to the $2,000 bequest in controversy, and the expressed intentions relative to other funds does not imply a similar intention as to these particular gifts. And, again, such a construction would be absolutely contrary to the expressed will of the testator, for in the fifth paragraph the land procured by these investments is "to be theirs (the brothers and sister named) as long as they shall live without the right to incumber or sell the same and all the rents profits and benefits of the same to be theirs, taxes to be paid by them and at their death it shall be divided equally among their living children." It is apparent, therefore, from this expression that the title is not to be held in trust but that the right to the enjoyment of the estate is to be circumscribed only by the limitations expressed in the will. The executor argues that, if the title is vested in the beneficiaries without reservations, they might permit it to be incumbered by an accumulation of taxes, or otherwise. This may be so, but such a condition will not permit the creation of a trust. At most this argument only shows that testator did not use as good judgment as would the executor or the court, but his judgment, although unwise, must be respected. The court should have advised the executor to invest for Henry Buerstetta, John Buerstetta, William Buerstetta and Matilda Tingle the said $2,000 devised to them, respect-

ively, as follows: In land in Nebraska to be selected by said devisee so that a life estate only, and without the power to incumber or alienate the same, should vest in the devisee, remainder in equal shares to his children him surviving.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for further proceedings.

DUFFIE and GOOD, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and this cause remanded for further proceedings.

REVERSED.